UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM BALUYOT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-00434-TWP-MG |
| | ) |
| ONE SOLUTION LOGISTICS OF INDIANA, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| ONE SOLUTION LOGISTICS OF INDIANA, INC., | ) |
| | ) |
| Counter-Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAM BALUYOT, | ) |
| | ) |
| Counter-Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR**
**JUDGMENT ON THE PLEADINGS**

This matter is before the Court on a Motion for Judgment on the Pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) by Defendant/Counter-Claimant One Solution Logistics of Indiana, Inc. ("One Solution") (Filing No. 27). Plaintiff/Counter-Defendant Willard Baluyot ("Baluyot") initiated this action against One Solution, alleging that he was selected for a job elimination in violation of the Americans with Disabilities Act, ("ADA"), as amended, 42 U.S.C. §12101 *et. seq.*, and Family and Medical Leave Act of 1993, ("FMLA"), as amended, 29 U.S.C. §2601 *et seq.*, (Filing No. 1). One Solution filed an Answer and Counterclaim (for breach of contract and unjust enrichment) contending that prior to his separation from One Solution, Baluyot

signed a Severance Agreement releasing all claims related to his employment (Filing No. 16), and then moved for judgment on the pleadings (Filing No. 27). For the following reasons, the Motion for Judgment on the Pleadings is **granted**.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion for judgment on the pleadings, the Court accepts as true the factual allegations in the Complaint and draws all inferences in favor of Baluyot as the non-moving party. *See Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 464 (7th Cir. 2012). The parties do not dispute the factual background.

In February 2020, One Solution told Baluyot that his position with the company was being eliminated because it was being outsourced, thereafter, the parties negotiated a Severance Agreement and Release of Claims ("Severance Agreement"). On February 20, 2020, Baluyot signed the Severance Agreement and on February 21, 2020, One Solution signed the same Severance Agreement. (Filing No. 16-1 at 3.) As a part of the Severance Agreement, One Solution agreed to provide Baluyot a severance payment of $3,021.00 and $10,137.46 for a COBRA continuation payment, within 21 days of the effective date of the Severance Agreement (February 17, 2020) and recommended that Baluyot should consult with an attorney before signing it. The Severance Agreement also states:

> I, for myself, my family, my heirs, and assigns, hereby forever release and discharge, [One Solution], its affiliates, officers, directors, employees, agents and assigns, including but not limited to Honda Logistics North America, Inc. (collectively, the "Released Parties") from any and all charges, claims, demands, judgments, causes of action, damages, expenses, costs, attorneys' fees, and liabilities that can be lawfully released and waived. I understand that the claims released and waived by this section include all rights and claims relating to my employment and severance of my employment, including without limitation, any claims I can lawfully release and waive under:

> (a) Title VII of the Civil Rights Act of 1964, as amended;
> (b) **The Americans with Disabilities Act**;
> (c) The Employee Retirement Income Security Act;
> (d) **The Family and Medical Leave Act of 1993**;
> (e) The Age Discrimination in Employment Act (as amended by the Older Workers Benefit Protection Act); and
> (f) Any other federal, state or local laws or regulations governing employment relationships.
>
> This Release extends to **all claims of every nature and kind** that may be lawfully released, whether known or unknown, suspected or unsuspected, presently existing or **resulting from or attributable to any act or omission of the Released Parties occurring before the signing of this Agreement**. . . .

(Filing No. 16-1, ¶ 5) (emphases added).  The Severance Agreement would become effective seven days after Baluyot signed it, if not earlier revoked by him.  *Id* at ¶ 8.

Sometime after February 21, 2020, the parties realized that One Solution omitted an essential term of the Severance Agreement by not reflecting that an additional payment of $1,007.16 was owed to Baluyot.  One Solution drafted and sent Baluyot a Second Severance Agreement, reflecting a severance payment totaling $4,028.16 to be paid in one check in the amount of $3,021.00, and one check in the amount of $1,007.16, plus the COBRA continuation payment in the amount of $10,136.46.  The Second Severance Agreement provided Baluyot with a seven (7) day period after signing the agreement within which to provide written revocation should he wish to revoke the agreement.  The Second Severance Agreement also contained the following clause: "This Agreement sets forth the entire Agreement between the Company and me and supersedes and replaces any and all prior or contemporaneous representations or agreements, whether oral or written." (Filing No. 16-3 ¶ 13.)  Baluyot received payment for both the $3,021.00 severance payment and $10,136.46 for a COBRA continuation payment, as well as the additional severance payment of $1,007.16 from One Solution. (Filing No. 18 at ¶¶ 14-16).  On March 17, 2020, both Baluyot and One Solution signed the Second Severance Agreement.  Six days later, on

3

March 23, 2020, Baluyot submitted a timely written revocation of the Second Severance Agreement to One Solution.  (Filing No. 18 at ¶¶ 19-20).

On February 21, 2021, Baluyot filed this action against One Solutions alleging that his severance with One Solution was not because his position was being eliminated, rather he was selected for job elimination--in violation of the FMLA and ADA--because of the number of absences and other difficulties cause by his disability.  (Filing No. 1.)  Shortly thereafter, One Solution filed its Answer and Defenses to Plaintiff's Complaint and Defendant One Solution Logistics of Indiana, Inc.'s Counterclaims Against Plaintiff Willard Baluyot (Filing No. 16).  On August 5, 2021, One Solution filed the instant Motion for Judgment on the Pleadings on Baluyot's FMLA and disability discrimination claim.  (Filing No. 27.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed a complaint and an answer, and the pleadings are closed.  Rule 12(c) motions are analyzed under the same standard as a motion to dismiss under Rule 12(b)(6).  *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007); *Frey v. Bank One,* 91 F.3d 45, 46 (7th Cir. 1996).  The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient.  *Id.*  Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted).  To be facially plausible, the complaint must allow "the court to draw the reasonable inference that One

Solution is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Like a Rule 12(b)(6) motion, the court will grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452 (7th Cir. 1998) (*quoting Craigs, Inc. v. Gen. Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir. 1993)). The factual allegations in the complaint are viewed in a light most favorable to the non-moving party; however, the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id.* (*quoting R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.,* 895 F.2d 279, 281 (7th Cir. 1989)). "As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone. . . . The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted).

### III.  DISCUSSION

Both agreements provide that they shall be governed and interpreted by Indiana law.

> Under Indiana law, the construction of the terms of a written contract is a pure question of law. When construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. First, we must determine whether the language of the contract is ambiguous. … The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. If the language of the instrument is unambiguous, the parties' intent will be determined from the four corners of the contract. … We read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless. We must accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict.

*Whitaker v. Brunner*, 814 N.E.2d 288, 293–94 (Ind. Ct. App. 2004). And "[t]he contract must be read as a whole when trying to ascertain the parties' intent." *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1315 (Ind. 1996). Here, it is undisputed that the parties agreed to the terms of the

5

Severance Agreement, thus, the intent of the parties should be determined by the language employed in the document. *See Thomas v. Thomas*, 577 N.E. 2d 216, 219 (Ind. 1991).

Because Baluyot waived and released all claims asserted in this lawsuit when he entered into the Severance Agreement, One Solution argues that it is entitled to judgment on the pleadings. One Solution points out that the parties signed the Severance Agreement and Baluyot did not revoke it within seven days; therefore, the Severance agreement became effective on February 27, 2020. One Solution contends that it fulfilled its obligations under the Severance Agreement when it paid Baluyot as agreed to pursuant to the terms of the agreements. The Severance Agreement included a term that Baluyot waived and released any claims under the ADA and FMLA. One Solution argues that Baluyot is attempting to divest himself of the benefit that he bargained for and attempt to squeeze additional funds from One Solution for claims already resolved, released, and discharged. (Filing No. 28 at 5.)

In response, Baluyot first addresses the counterclaim for breach of contract, and asserts that here, no contract existed that could form a breach of contract claim or result in damages as a result of any purported breach. (Filing No. 31 at 4.) But One Solution points out that it is not seeking a judgment on the pleadings with respect to its counterclaims for breach of contract and unjust enrichment; rather, it only seeks a judgment on the ADA and FMLA claims. (Filing No. 32 at 4.)

Baluyot next points out that the Second Severance Agreement provided him with a seven (7) day time period after signing the agreement within which to revoke the agreement. The Second Severance Agreement contained a clause stating: "This Agreement sets forth the entire Agreement between the company and me and supersedes and replaces any and all prior or contemporaneous representations or agreements, whether oral or written." (Filing No. 16-3 at ¶ 13.) Baluyot signed

Second Severance Agreement on March 17, 2020, and on March 23, 2020, he timely revoked the Second Severance Agreement. Baluyot argues that the Second Severance Agreement "that was signed and revoked superseded any and all previous agreements, written or oral, between Baluyot and Defendant. As such, no contract was formed, nor was Baluyot required to pay back any money sent by the Defendant. To enforce otherwise would contravene the public policy of freedom to contract." (Filing No. 31 at 5.)

Baluyot is mistaken.  The intent of the parties in executing the Severance Agreement is clear.  Although Baluyot has expressed partial denials, based upon his admissions, the parties agreed to the Severance Agreement, Baluyot signed the Severance Agreement and he received both the Severance Payment and the COBRA Continuation Payment as provided in the Severance Agreement.  Baluyot did not revoke the Severance Agreement within seven days of his execution thereof, and it became effective after February 27, 2020. As noted by Judge Barker in *Recovery Database Network, Inc. v. Balogh*, No. 1:16-cv-01923, 217 U.S. Dist. LEXIS 113561 (S.D. Ind. July 20, 2017), given the language of the Severance Agreement that Baluyot admits he signed, agreed to and received payment from, the Court is obligated to enforce the contract as drafted.

What Baluyot did on March 23, 2020 was revoke his acceptance of the Second Severance Agreement, and that revocation had no impact on the already-in-effect Severance Agreement.  It is true that the Second Severance Agreement contained a clause providing that, should the parties enter into the second writing, it would supersede all other agreements between the parties. (Filing No. 16-3, ¶ 13.)  But as argued by One Solution, Baluyot rendered that clause inapplicable when he timely revoked his agreement to the Second Severance Agreement.  One Solution is correct in its assertion that because the Second Severance Agreement never became effective, it does not supersede the Severance Agreement.  It is undisputed that the Severance Agreement became

effective on February 27, 2020. Baluyot could not revoke his acceptance of the Severance Agreement after February 27, 2020 and the terms of the Severance Agreement remains effective today.

Baluyot filed this lawsuit nearly a year later, on February 25, 2021, asserting claims arising out of his employment with One Solution that arose prior to February 25, 2021, after affirmatively agreeing not to pursue these very claims. As a matter of law, after February 27, 2020, Baluyot released all claims, known or unknown, arising out of his employment with One Solution. Under these circumstances, Baluyot is not entitled to proceed with his ADA and FMLA claims against One Solutions, and One Solution is entitled to a judgment on the pleadings.

### IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** One Solution's Motion for Judgment on the Pleadings (Filing No. 27), and Baluyot's Complaint (Filing No. 1) is **DISMISSED with prejudice**.

One Solution's Counterclaims remains pending. It is the Court's belief that the dismissal with prejudice of the operative Complaint resolves the counterclaims. One Solution is given **fourteen (14) days from the date of this Order** to show cause why the counterclaims should not be dismissed as moot. Upon resolution of the counterclaims, final judgment will issue under a separate order.

 **SO ORDERED.**

Date: 3/21/2022

*[signature]*

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andrew Dutkanych, III
BIESECKER DUTKANYCH & MACER LLC
ad@bdlegal.com

Ryan William Sullivan
BIESECKER DUTKANYCH & MACER LLC
rsullivan@bdlegal.com

Janay M. Stevens
VORYS SATER SEYMOUR AND PEASE LLP
jmstevens@vorys.com

Jonathan R. Vaughn
VORYS SATER SEYMOUR AND PEASE LLP
jrvaughn@vorys.com

Philip R. Zimmerly
BOSE McKINNEY & EVANS, LLP
pzimmerly@boselaw.com